**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

ARENT FOX LLP,                          )
                                        )
                    Plaintiff,          )        C.A. No. 09-cv-7008 (PKC)
                                        )
            v.                          )
                                        )
ROBERTA ROUSSEAU,                       )
                                        )
                    Defendant.          )
_____   )

 

 

**DEFENDANT ARENT FOX'S MEMORANDUM IN**
**OPPOSITION TO MOTION TO VACATE DEFAULT JUDGMENT**

 

 

Arent Fox LLP
David Wynn, Esq. (DW 8660)
1675 Broadway
New York, NY 10019
Tel: 212.484.3900
Fax: 212.484.3990
Email: wynn.david@arentfox.com
*Attorneys for Defendant Arent Fox LLP*

November 6, 2009

# TABLE OF CONTENTS

**Page**

I.    BACKGROUND ...................................................................................... 3

    The Parties ............................................................................................... 3

    The Engagement Letter ............................................................................ 3

    Arent Fox's Performance of the Work ..................................................... 5

    Arent Fox's Attempt at Compromise ....................................................... 7

    Rousseau's Disregard of the Arbitration Notice and Suit ....................... 7

    The Default and the Default Judgment ..................................................... 8

    Arent Fox's Discussions with Lawrence Rader ....................................... 9

    The Letters to the Court ........................................................................... 9

    The Motion to Vacate ............................................................................ 10

II.    ARGUMENT ....................................................................................... 10

       A.    Rousseau's Default Was Willful ................................................ 12

       B.    Rousseau Has Demonstrated No Meritorious Defense ...................... 13

           1.    This Court Has Jurisdiction .................................................... 13

           2.    Rousseau Offers No Admissible Evidence In Defense To Arent Fox's Breach Of Contract Claim (Count I) .............. 17

           3.    Rousseau Offers No Evidence In Defense To Arent Fox's Account Stated Claim ................................................ 19

           4.    Arent Fox Made A Proper Showing Of Damages Under Rule 55 .................................................................. 20

       C.    The Court Should Not Vacate The Judgment Without A Bond .......... 22

III.   CONCLUSION .................................................................................... 23

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                          **Page**

Akey v. Clinton County,
    375 F.3d 231 (2d Cir. 2004)       16

Carden v. Arkoma Associates,
    494 U.S. 185 (1990)       13

Chimart Assoc. v. Paul,
    66 N.Y.2d 570 (1986)       18

Chisholm-Ryder Co. v. Sommer & Sommer,
    70 A.D.2d 429 (1979)       19

Commercial Bank of Kuwait v. Rafidain Bank,
    15 F.3d 238 (2d Cir. 1994)       11

Commercial Casualty Insurance Co. v. Consolidated Stone Co.,
    278 U.S. 177 (1929)       14

Cortec Indus., Inc. v. Sum Holding L.P.,
    949 F.2d 42 (2d Cir. 1991)       13

Doctor's Associates, Inc. v. Distajo,
    107 F.3d 126 (2d Cir. 1997)       14

Federal Deposit Ins. Corp. v. Schaffer,
    731 F.2d 1134 (4th Cir. 1984)       16

First Fidelity Bank, N.A. v. Government of Antigua & Barbuda-Permanent Mission,
    877 F.2d 189 (2d Cir. 1989)       22

Flanagan v. Flanagan,
    267 A.D.2d 80 (1999)       15

Giaguara S.p.A. v. Amiglio,
    257 F.Supp.2d 529 (E.D.N.Y. 2003)       17

Greenleaf v. Safeway Trails,
    140 F.2d 889 (2d Cir. 1944)       17

Hagner v. United States,
    285 U.S. 427 (1932)       16

In re Suprema Specialties, Inc.,
    330 B.R. 40 (S.D.N.Y. 2005)          21

Jim-Mar Corp. v. Aquatic Const., Ltd.,
    195 A.D.2d 868 (1993)          19

Karpinski v. Ingrasci,
    28 N.Y.2d 45 (1971)          18

Lam v. American Exp. Co.,
    265 F.Supp.2d 225 (S.D.N.Y. 2003)          13

Louisville & Nashville R. Co. v. Mottley,
    211 U.S. 149 (1908)          14

Marziliano v. Heckler,
    728 F.2d 151 (2d Cir. 1984)          12

Menorah Ins. Co., Ltd. v. INX Reinsurance Corp.,
    72 F.3d 218 (1st Cir. 1995)          15

New York v. Green,
    420 F.3d 99 (2d Cir. 2005)          11, 12, 20

Pecarsky v. Galaxiworld.com, Ltd.,
    249 F.3d 167 (2d Cir. 2001)          13

Powerserve International, Inc. v. Lavi,
    239 F.3d 508 (2d Cir. 2001)          22

Rogers v. Hartford Life & Acc. Ins. Co.,
    167 F.3d 933 (5th Cir. 1999)          14

S.E.C. v. McNulty,
    137 F.3d 732 (2d Cir. 1998)          11, 13

S.E.C. v. Mgmt. Dynamics,
    515 F.2d 801 (2d Cir. 1975)          21

Scherk v. Alberto-Culver Co.,
    417 U.S. 506 (1974)          13

Staehr v. Hartford Fin. Servs. Group, Inc.,
    547 F.3d 406 (2d Cir. 2008)          13

Weiner v. McGraw-Hill, Inc.,
   57 N.Y.2d 458 (1982)                                18

Williams v. Life Sav. & Loan,
   802 F.2d 1200 (10th Cir. 1986)                  14

## State Regulations

22 NYCRR § 137.6              15

## Federal Rules

Fed. R. Civ. P. 55            20, 21

Fed. R. Civ. P. 55(b)(2)          21

Fed. R. Civ. P. 55(c)          10

Fed. R. Civ. P. 60         1, 11, 14

Fed. R. Civ. P. 60(b)          10

## Local Rules

Attorney-Client Fee Dispute Program Rule 5(b)(2)(a)    15

Rules of the Chief Administrator of the Courts, Part 137    7

Rules of Professional Conduct § 4.2    12

ARENT FOX LLP
David Wynn, Esq. (DW 8660)
1675 Broadway
New York, NY 10019
Tel: 212.484.3900
Fax: 212.484.3990
Email: wynn.david@arentfox.com
*Attorneys for Defendant Arent Fox LLP*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARENT FOX LLP, | C.A. No. 09-cv-7008 (PKC) |
| Plaintiff, | |
| v. | **DEFENDANT ARENT FOX'S** |
| | **MEMORANDUM IN** |
| ROBERTA ROUSSEAU, | **OPPOSITION TO MOTION** |
| | **TO VACATE DEFAULT** |
| Defendant. | **JUDGMENT** |

Plaintiff Arent Fox LLP ("Arent Fox") opposes the motion of Defendant Roberta Rousseau, per Rule 60, Fed. R. Civ. P., to vacate the $233,738.71 default judgment, entered on September 28, 2009.

Rousseau is a former Goldman, Sachs officer and multi-millionaire who retained Arent Fox to defend her in two pieces of litigation, both of which Arent Fox successfully litigated to dismissal. She paid only her initial retainer, even though she was apprised that the total cost would be much more and was so billed on a monthly basis for four months. Rousseau purposely ignored notices from Arent Fox, including the notice of arbitration, as well as the summons and complaint in this case, which were personally served by the sheriff on Rousseau at her home in an exclusive gated Miami community.

The judgment should not be vacated for two reasons. First, Rousseau cannot demonstrate that her default was not willful per the case law from this Circuit. She was personally served on August 28, 2009, and knew a responsive pleading was due. Neither she nor her counsel made any effort to contact Arent Fox or file anything. Even crediting the untrue allegations of her counsel that he called and left a message that he wished an extension, per the law of this Circuit, failure to notify the Court, as was the case here, is sufficient to show willfulness. Certainly, this conduct coupled with her ignoring notices from Arent Fox evidence a knowing failure to answer.

Second, the judgment should not be vacated because Rousseau cannot show a "complete" defense. Her claim that the Court has no jurisdiction is wrong because arbitration is waivable, and it was waived here. Under established precedent, the failure to institute arbitration after a demand and a default judgment constitutes a waiver as a matter of law. Thus, the arbitration clause is not a ground to upset a default judgment.

The parol evidence rule similarly bars her apparent defense to Count I (breach of contract) that she was not a party to the Engagement Letter or that the fee was capped at $25,000. These allegations are inconsistent with the plain terms of the Letter. With respect to Count III (account stated), Rousseau offers no explanation for receiving eight bills over four months, the first of which was in excess of $25,000, voicing no objection and promising to pay. Thus, Rousseau does not even purport to offer any defense, much less a "complete" defense, to this Count.

As such, this Court should not disturb the default judgment. In the event that it does however, it should condition its order upon the posting of a bond in the amount of the judgment, plus interest.

# I. BACKGOUND

## The Parties

Plaintiff Arent Fox is a limited liability partnership engaged in the practice of law in New York. The partners of Arent Fox are citizens of States other than the State of Florida. Second Declaration of Paul M. Kaplan ("Second Kaplan Decl.") ¶ 2. Defendant Rousseau is a citizen of Florida. Id. ¶ 3.

Rousseau's attempt to paint herself as a poor, elderly Florida retiree is somewhat disingenuous.[1] She is a retired Goldman, Sachs Vice President who lives in an exclusive gated community in Miami, Florida, and owns properties in both Florida and California. Rousseau holds 80% of the shares of Bimota NA, which is an American franchisee of the Italian franchisor Bimota SPA. Her son holds 10% and a third party officer of Bimota NA (Harry Scott) holds the remaining 10%. Rousseau's husband is a retired neurosurgeon and heir to a family business. Id.

## The Engagement Letter

Rousseau engaged Arent Fox to provide legal services in connection with New York federal and state litigations and related matters (the "Work"). Specifically, Rousseau asked Arent Fox partner Paul M. Kaplan ("Kaplan") to represent Rousseau and her son[2] in several simultaneous matters, Bimota SPA v. Rousseau, et al., C.A. No. 1:08-cv-10274-VM (S.D.N.Y.); Scott v. Bimota, N.A., et al., Index No. 603397/08 (N.Y. S.Ct.), and one adjunct misfiled arbitration. Second Kaplan Decl. ¶ 4. All of these cases relate to a claim of their Italian franchisor, Bimota SPA, regarding Rousseau's purchase of a motorcycle franchise and her ownership and sale of a fleet of Bimota vehicles. The federal suit alleges (and has supporting

---

[1]     Rousseau made this assertion in her letter to the Court, dated October 9, 2009.

[2]     The younger Rousseau and Bimota NA are not parties to this lawsuit. They are believed to be impecunious, and therefore it is pointless to obtain a judgment against them.

affidavits that affirm) that the Rousseaus secreted monies from sales of motorcycles and

defrauded the franchisor. Bimota SPA's complaint seeks several million dollars in

compensatory and punitive damages. Id. To the best of Arent Fox's knowledge neither Bimota

NA nor the Rousseaus have ever asserted any sort of claim against Bimota SPA. Thus, it

inconceivable to suggest Arent Fox's contemplated source of payment was a portion of the

planned recovery. Second Kaplan Decl. ¶ 5.

     Arent Fox's billing practices applicable to this engagement were disclosed in writing to

Rousseau in an Engagement Letter. Complaint ¶ 6. Rousseau personally signed the Engagement

Letter before Arent Fox performed the Work, and therefore Rousseau personally agreed to the

terms of the Engagement Letter. Complaint ¶¶ 6-7. It is nonsense that Rousseau suggests that

she did not engage Arent Fox and only did so on behalf of Bimota NA, as this is at variance with

the very language of the Engagement Letter, which states that Arent Fox would represent her

personally, and there was a signature line for both Bimota NA and her personally as well as for

her son personally. Second Kaplan Decl. ¶¶ 6-7, Exhibit ("Ex.") A; Declaration of Rousseau Ex.

A (Docket No. 14-2). Bimota NA was not even a party to the federal litigation.

     Ms. Rousseau and her son paid per the Engagement Letter $25,000 as an "initial"

retainer. It was explained to her that the actual cost of conducting this multi-court, federal and

state litigation would be in the hundreds of thousands of dollars. Rousseau's new-found

arguments that the $25,000 was a cap or that there was a contingency relationship are flatly

contradicted by express provisions of the Engagement Letter. The Engagement Letter says that

the "initial" retainer was just that, an "initial" retainer to be followed by regular "monthly"

billing. Id. The Engagement Letter also said there would be "interest on overdue amounts" and

"reasonable attorneys' fees" in "the unfortunate event that [Arent Fox is] forced to incur

collection costs to obtain payment." Id. These terms are in direct conflict with the notion that the $25,000 was a cap or that there was a contingency arrangement.

### Arent Fox's Performance of the Work

Pursuant to the terms of the engagement, Arent Fox fully and adequately performed legal services for Rousseau in connection with the matter. Complaint ¶ 11. Arent Fox produced unqualifiedly successful results for Rousseau. Each of the cases in which Arent Fox defended Rousseau was dismissed, as was the arbitration. Second Kaplan Decl. Exs. B and C.

The federal case involved an application for a Temporary Restraining Order (which the Court declined to grant), a motion for a Preliminary Injunction (which Arent Fox defeated), and not one but two Complaints (which Arent Fox succeeded in having dismissed). At the end of the federal action, this Court granted Arent Fox's request to require Bimota SPA to arbitrate the dispute, not simply against Rousseau's corporation, but against Rousseau herself, even though she was not a signatory to the arbitration agreement. The federal docket alone shows thirty-nine filings. The state action also involved motion practice and a hearing, and shows that Arent Fox successfully defended against claims brought against her by a minority shareholder of her corporation. Attached for the Court's convenience are copies of the dockets from the two cases, which should give the Court some further detail about the extent of the work. Second Kaplan Decl. ¶ 8, Ex. B and C.[3] And as for expense, throughout the duration of the cases, Kaplan had suggested that an associate might perform certain tasks at a lower billing rate. However, Rousseau insisted that Kaplan do these tasks, which he did at Rousseau's express instruction. Second Kaplan Decl. ¶ 9.

---

[3]    As stated infra, the Court may take judicial notice of is own docket, as well as public records.

The underlying work was done over a four-month period, billed every month without any protest or objection from Ms. Rousseau. Complaint ¶¶ 27-29. Beyond the initial $25,000 retainer, Ms. Rousseau did not pay any of her legal bills. Rousseau was sent eight invoices for two different matters from January 23, 2009, to April 23, 2009. The particular invoices and their amounts are reflected in the Attorney Declaration of Paul M. Kaplan in Support of Request/Application for Default Judgment ("First Kaplan Decl.") ¶ 5. They were as follows:

1/23/09 Invoice No. 1180752 for $6,034.00.

1/23/09 Invoice No. 1180753 for $70,757.50

2/20/09 Invoice No. 1184374 for $4,374.46

2/20/09 Invoice No. 1184376 for $74,422.26

3/20/09 Invoice No. 1188234 for $1,756.20

3/20/09 Invoice No. 1188235 for $41,991.87

4/23/09 Invoice No. 1193909 for $1,027.87

4/23/09 Invoice No. 1193910 for $43,394.57

The bills themselves are attached to Second Kaplan Decl. ¶ 9, Ex. D.

As stated in the Complaint, Rousseau "received each bill, and has been silent as to any problem with the amount stated on each bill." Complaint ¶ 28. Her "silence coupled with [her] acceptance of subsequent legal services and promises to pay constitute an acceptance of the account stated." Complaint ¶ 29. Indeed, when bills started accumulating, Kaplan questioned Rousseau. The only response he received until the very end of the relationship was that the bills would be paid. There was **never** a hint that the work was unnecessary or the corresponding cost unjustified. Certainly if the initial $25,000 were supposed to cover the entirety of the bills, Rousseau would have questioned such bills at some point, since $25,000 was eclipsed by the

very **first** bills on January 23, 2009.  Not only did Rousseau expect bills of such magnitude, she stated to Kaplan at one point that she would rather pay hundreds of thousands of dollars to her counsel than pay one cent to the plaintiff Bimota SPA.  Second Kaplan Decl. ¶ 10

Rousseau owes $218,803.73 in legal fees and costs for services rendered, exclusive of interest and exclusive of costs and expenses relating to collection.  Complaint ¶¶ 12, 19, 21, 30.  Arent Fox is also owed interest for this action.  Arent Fox did not seek and did not receive its collection fees in connection with its request for a default judgment.

### Arent Fox's Attempt at Compromise

After four months of unpaid bills, Arent Fox offered to allow Rousseau to pay over time.  Arent Fox sent an email to Rousseau, indicating that the firm understood that she had no objection to the bills, but needed more time to pay.  Arent Fox therefore proposed a promissory note on April 28, 2009.  See Attachment B to Declaration of Rousseau.  (Docket No. 14-3)  Rousseau's only response (on May 15, 2009) was that she would not sign the note, and was sorry for her lack of funds.  But she registered no objection to the bills themselves or claimed Arent Fox had no right to send her bills, as would be the case if she were not personally obligated, or the $25,000 retainer covered the liability or fees were subject to a contingency arrangement.  See Second Kaplan Decl. ¶ 11, Ex. E.

### Rousseau's Disregard of the Arbitration Notice and Suit

Based upon Rousseau's failure to propose payment terms, Arent Fox exercised its rights under the Engagement Letter.  Specifically, the Engagement Letter calls for arbitration of fee disputes.  As such, Arent Fox gave Rousseau notice under Part 137 of the Rules of the Chief Administrator of the Courts of her right to arbitration, through a letter dated June 24, 2009, sent by certified mail.  Rousseau did not make any request for arbitration with the New York County

Joint Committee on Fee Disputes and Conciliation, as instructed, or even respond to the notice. She now claims she does not "recall" receiving any such notice, but copies of the notice and the certified mailing receipt are attached hereto. See Declaration of Edith J.K. Mezzich ("Mezzich Decl."), Exs. F and G.

Because Rousseau had not completed the forms necessary for arbitration and had not even responded to Arent Fox's notice, Arent Fox filed this lawsuit on August 7, 2009. See Docket No. 1. Arent Fox alleged breach of contract (Count I), quantum meruit (Count II) and breach of account stated (Count III). Id. Arent Fox served Rousseau personally, through the Miami sheriff's office, on August 28, 2009, and there is no question of proper service. (Docket No. 4) The Miami sheriff's office photo-identified Rousseau. Docket No. 4A response was therefore due on September 17, 2009.

### The Default and the Default Judgment

Notwithstanding the service of the Complaint, Rousseau filed no responsive pleading. On September 23, 2009, the Clerk's office signed a notice of default. Docket No. 5 Attachment 1. On September 24, 2009, Arent Fox moved for a default judgment (Docket Nos. 6, 7),[4] which the Court granted on September 28, 2009. Docket No. 8.[5]

---

[4]     In its motion, Arent Fox sought the aforementioned $218,803.73 plus $14,934.98 in interest.

[5]     Rousseau has represented to the Court multiple times now that Arent Fox got a default judgment "four days" after a response was due. In fact, the response was due on September 17, and thus **eleven** days elapsed before the Court granted a default judgment.

### Arent Fox's Discussions with Lawrence Rader

After the default judgment was entered, Rousseau's counsel Lawrence Rader first contacted Arent Fox. Paul M. Kaplan -- the lead attorney for the Work but not counsel of record in this action -- did not speak to Rousseau's counsel Lawrence Rader before a default judgment had been entered. Notwithstanding allegations to the contrary, Kaplan also never received any sort of message from Rader before then, either. Indeed, neither the undersigned counsel of record David Wynn nor Kaplan was even aware of Mr. Rader's existence before the default judgment, and Arent Fox challenges him to produce any sort of writing that suggests otherwise. Second Kaplan Decl. ¶ 12; Declaration of David Wynn ("Wynn Decl.") ¶¶ 2, 4. At no time did Kaplan admit to recognizing Rader or acknowledge any message regarding the Complaint. Second Kaplan Decl. ¶ 12.[6] The undersigned first received and returned a call on September 30, 2009, and called again on October 1, 2009. Wynn Decl. ¶¶ 2-5. During this latter call, the undersigned explained that Arent Fox had obtained a default judgment. Rader then asked whether Arent Fox would permit him to file a late answer, but could not articulate a reason why an answer was not filed or why there was a meritorious defense, other than to say that the total bill was substantially larger than the initial $25,000 retainer. Wynn Decl. ¶ 5. Rader did not raise the issue of arbitration, the question of Rousseau's personal liability, a fee cap or a contingency relationship. Wynn Decl. ¶ 5; Second Kaplan Decl. ¶ 12.

### The Letters to the Court

On October 5, 2009, Rousseau wrote to the Court asking for a conference regarding a planned motion to vacate in purported accordance with the Court's Individual Rules. This

---

[6]     Giving Rader the benefit of the doubt, Arent Fox speculates that he may have been confusing Kaplan with an adversary in the underlying Bimota SPA matter. Arent Fox does not does not lightly assume he would make an intentional misrepresentation to the Court.

Court's Individual Rules require that the letter "set[] forth in detail the basis for the anticipated motion." While Rousseau made various untrue representations to the Court, there was **no** mention that there was an arbitration defense, that Rousseau was not a party to the Engagement Letter, that there was an alleged $25,000 cap on fees or that there was a planned contingency relationship. Likewise, Rousseau wrote to the Court again about a planned motion to vacate on October 9, 2009. Again, Rousseau made no mention of the foregoing.

### The Motion to Vacate

On October 23, 2009, Rousseau filed her motion to vacate. She asserts (i) the Court had no jurisdiction to enter the default judgment because of an arbitration clause, (ii) her default was not willful, (iii) she was not a party to the Engagement Letter, (iv) the Engagement Letter capped fees at $25,000 to be followed by a contingency arrangement and (v) Arent Fox failed to follow the Court's Standing Rules in showing damages. As mentioned above, three of the foregoing items (i), (iii) and (iv) were never mentioned in the letter to the Court or to Arent Fox.

## II. ARGUMENT

Rule 55(c), Fed. R. Civ. P., provides that in order for the Court to set aside a default judgment, it must apply the standards of Rule 60(b).[7] Per Rule 60(b), when a district court decides a motion to vacate a default judgment, the Court's determination must be guided by three principal factors which a movant must address:

> (1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice.

---

[7]    The rule also requires "good cause" to set aside an entry of default. Since a default judgment has already been entered, this part of the rule is inapplicable, and the more stringent requirements of Rule 60(b) govern.

New York v. Green, 420 F.3d 99, 108 (2d Cir. 2005) (quotations omitted). "The district court must consider all of these factors." Commercial Bank of Kuwait v. Rafidain Bank, 15 F.3d 238, 243 (2d Cir. 1994). Thus, for instance, "[a]n absence of prejudice to the nondefaulting party would not in itself entitle the defaulting party to relief from the judgment." S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998).

Rousseau offers no good explanation for why she did not answer. Indeed, she purposely failed to respond to the Complaint and waited for Arent Fox to obtain a default judgment. Notwithstanding Rousseau's argument to the contrary, the arbitration clause does not affect the Court's jurisdiction; the clause is waivable. It was in fact waived here because Rousseau did not respond either to the notice of her right to arbitration or the Complaint, and Rule 60 does not allow a vacation of a judgment based on an arbitration clause. Likewise, Rousseau offers no meritorious defense to either the claim for breach of contract (Count I) or the claim for breach of account stated (Count III).[8] As such, for any of these reasons, the Court should not disturb the default judgment.

---

[8]    Since there was an explicit contract, it is unnecessary for Arent Fox to prevail on Count II alleging unjust enrichment. However, even if she were not a party to the contract, this Count would merit recovery for the value of the services she received, which is equal to the contract claim.

## A.  Rousseau's Default Was Willful.

First, it is plain that Rousseau's default was willful.  Rousseau does not claim she

obtained any extension of time to answer, or even obtained an agreement from Arent Fox to an

extension.  Notwithstanding Rousseau's invention that her attorney left a telephone message with

an attorney not even of record in this case,[9] Rousseau "knew on the return date of the

[Complaint] that [a] stipulation extending [her] time to respond to the [Complaint] had not been

filed, and that [she] had 'simply . . . . ignored [her] obligation to inform the Court' of [any]

stipulation."  Under these very facts, the Second Circuit has upheld a default judgment, noting

that "[n]o explanation was ever offered for [defendant's] failure to inform the court and thereby

avoid defaulting."  Marziliano v. Heckler, 728 F.2d 151, 156 (2d Cir. 1984).  That is all that is

needed to demonstrate willfulness.  And yet, the record here reflect even more willfulness, as

Rousseau also ignored Arent Fox's notices and pre-litigation request that she arbitrate.[10]

---

[9]      Though irrelevant, the assertion by Rousseau's attorney, Rader, that he left a "message" for Arent Fox attorney Kaplan belies common sense, as well as appropriate behavior.  If Rader were to call Arent Fox about the Complaint, logic would dictate that he would speak to the undersigned as the attorney of record in this collection matter, not Kaplan.  Kaplan's name is nowhere listed in the Complaint, and Kaplan does not know him from Adam.  In fact, Rule 4.2 of the Rules of Professional Conduct would require that Rader talk **only** to the counsel of record as the undersigned is the **only** attorney representing Arent Fox in connection with this fee issue. The statement in Rader's declaration that he left the message with Kaplan regarding an extension the day before Arent Fox sought a default cannot be true time-wise either, as Arent Fox sought the entry of default on September 23, 2009.  By that time, Rousseau was already in default since the answer was due September 17, 2009.  In any event, even crediting Rader's declaration, the assertion of a message left with Kaplan is irrelevant because there was no stipulation or motion for extension filed with the Court.

[10]     .  Rousseau also makes much of the fact that Arent Fox promptly sought a default judgment once Rousseau defaulted.  Arent Fox did so precisely because the Second Circuit desires a plaintiff to promptly ask for a default judgment and not delay.  New York, 420 F.3d at 110 (delay in seeking default weakens argument that failure to timely answer causes prejudice).

**B.    Rousseau Has Demonstrated No Meritorious Defense.**

"In order to make a sufficient showing of a meritorious defense . . . the defendant . . .

must present evidence of facts that, if proven at trial, would constitute a **complete** defense."

McNulty, 137 F.3d at 740.  A "defendant must present more than **conclusory denials** . . . to

show . . . a meritorious defense." Pecarsky v. Galaxiworld.com, Ltd., 249 F.3d 167, 173 (2d

Cir. 2001).  A "complete" defense is one that would result in a zero verdict for a plaintiff.[11]

**1.    This Court Has Jurisdiction.**

An arbitration clause does not deprive this Court of diversity jurisdiction, and diversity

jurisdiction is not in doubt here.  Rousseau is a citizen of Florida.  Arent Fox, being a limited

liability partnership, is a citizen of any state in which a partner resides.  See Carden v. Arkoma

Associates, 494 U.S. 185, 192-95 (1990).  None of Arent Fox's partners reside in Florida.[12]

In turn, one cannot assert an arbitration clause as a ground to vacate a default judgment

under Rule 60 because it is not an attack on jurisdiction.  The right to a specific forum is

waivable, and an "agreement to arbitrate before a specified tribunal is, in effect, a specialized

kind of forum-selection clause that posits not only the situs of suit but also the procedure to be

used in resolving the dispute." Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 (1974).  The

Second Circuit has held waiver of an arbitration clause will occur where "a party may be

---

[11]    In this regard, the Court is not restricted to the four corners of the pleading.  For instance, the Court may consider the Engagement Letter, as it is an undisputed document referred to in the Complaint and in fact attached to the motion to vacate.  See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991).  Accord, Lam v. American Exp. Co., 265 F.Supp.2d 225, 229 (S.D.N.Y. 2003).  Similarly, the Court is permitted to examine the bills themselves, as Rousseau has similarly attached some of them to her motion.  For sake of completeness, all of the bills are attached at the Second Kaplan Decl. Ex. D.  Finally, the Court may take notice of public records, such as its own docket and the New York County Supreme Court docket.  Staehr v. Hartford Fin. Servs. Group, Inc., 547 F.3d 406, 425 (2d Cir. 2008).

[12]    Likewise, there is no challenge to personal jurisdiction, nor can there be since Rousseau sought Arent Fox out, and in fact agreed to it.

prejudiced by the 'unnecessary delay or expense' that results when an opponent delays

invocation of its contractual right to arbitrate." Doctor's Associates, Inc. v. Distajo, 107 F.3d

126, 131 (2d Cir. 1997) (cite omitted).  If an arbitration clause deprived this Court of jurisdiction,

the Court would not be able to adjudicate, even with a waiver, as the parties cannot waive a

jurisdictional defect.  See, e.g., Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152

(1908).  Thus, Rousseau's argument is not a jurisdictional one.

A "meritorious" defense that does not go to subject matter or personal jurisdiction must

be a defense on the "merits."  Once a defendant has defaulted and a default judgment has been

entered, a non-merits defense predicated on what is essentially a forum selection clause or venue

objection cannot be erased by a Rule 60 motion.  In a similar situation, the Supreme Court in

Commercial Casualty Insurance Co. v. Consolidated Stone Co., 278 U.S. 177, 180 (1929) found

that a defendant properly served with process waived venue by suffering a default and **was not

entitled to vacation of that default**, reasoning:

> To hold that such a privilege may be retained until after the suit
> has reached the stage for dealing with the merits and then be
> asserted would be in our opinion subversive of orderly procedure
> and make for harmful delay and confusion.

Accord, Williams v. Life Sav. & Loan, 802 F.2d 1200, 1202 (10th Cir. 1986) ("if a party is in

default by failing to appear or to file a responsive pleading, defects in venue are waived, a

default judgment may be validly entered **and the judgment cannot be attacked collaterally for

improper venue**")(emphasis added); Rogers v. Hartford Life & Acc. Ins. Co., 167 F.3d 933, 942

(5th Cir. 1999) (refusing to vacate default judgment under Rule 60 based on venue defect).

Here, Rousseau waived her right to arbitration by failing to initiate it either after Arent

Fox invited her to do so, as set forth in letter attached to the Mezzich Decl., or before Arent Fox

was thereafter forced to obtain a default judgment.  From the first bill, dated January 23, 2009,

until the motion to vacate, dated October 23, 2009, Rousseau has been silent about arbitration. Indeed, even her letters to the Court seeking leave to move to vacate (as well as her discussions with counsel) omitted any mention of arbitration. Arent Fox has been put to the trouble, expense and delay of this litigation, while Rousseau has ignored all process. Ultimately, because of Rousseau's default, Arent Fox was forced to obtain a default judgment. Under this identical circumstance, the First Circuit has ruled that this amounts to a waiver as a matter of law. Menorah Ins. Co., Ltd. v. INX Reinsurance Corp., 72 F.3d 218, 221 (1st Cir. 1995). In that case, like this one, when defendant did not accept the plaintiff's arbitration request, plaintiff filed suit and obtained a default judgment. The First Circuit upheld the refusal to vacate such judgment, ruling that defendant had waived its right to arbitration.

The New York rules do not say that a lawyer must exclusively arbitrate even with a client who waives her right to do so. See, e.g., Flanagan v. Flanagan, 267 A.D.2d 80, 81, 699 N.Y.S.2d 406, 407 (1999) (client "waived her right to arbitration of the attorneys' fees dispute"). To the contrary, through creative use of ellipses in Rousseau's memorandum, she omits to inform the Court that even attorney-initiated arbitrations pursuant to pre-litigation fee agreements require a "Client Request for Fee Arbitration" to be completed and signed by the client. See Rule 5(b)(2)(a), Local Program Rules, Attorney-Client Fee Dispute Program; accord, 22 NYCRR § 137.6. Arent Fox presented such a form to Rousseau, and she ignored it. And the Engagement Letter says that "[i]f for any reason this arbitration procedure is unavailable, then we and you agree that any litigation will be commenced only in the United States District Court for the Southern District of New York . . . and you consent to the exclusive jurisdiction of that court."

Second Kaplan Decl. Ex. A (Emphasis added.)  Arbitration is not self-enforcing, and the procedure was in fact "unavailable" because Rousseau refused to participate.[13]

Rousseau's suggestion that she does not recall the notice is not evidence that she (or one of her employees) did not receive it.  In fact, this position is disingenuous as it was sent by certified mail to her home address and signed for by one "Ginny Small."  See Mezzich Decl. Ex. F and G.  "The rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed."  Hagner v. U.S., 285 U.S. 427, 430 (1932).  Where "notices . . . were properly addressed and mailed in accordance with regular office procedures, [a plaintiff] is entitled to a presumption that the notices were received [and] [d]enial of receipt, without more, is insufficient to rebut the presumption."  Akey v. Clinton County, 375 F.3d 231, 235 (2d Cir. 2004).  "The presumption is especially strong when the delivery is by certified mail," as it was here.  Federal Deposit Ins. Corp. v. Schaffer, 731 F.2d 1134, 1137 n.6 (4th Cir. 1984).  "Although it may be rebutted, the evidence required to overcome the presumption of receipt of certified mail correctly addressed and delivered to the home of the addressee must be clear and convincing."  731 F.2d at 1137.  In the Federal Deposit case, for instance, "defendants did not persuade the district court that their affidavits sufficiently rebutted the presumption [where the motion was] not supported by any affidavit from . . . other member[s] of the household indicating what became of the certified mail."  731 F.2d at 1137-38.

---

[13]    It is further telling that Rousseau wants this Court to dismiss this action, rather than order arbitration.  While the Court in the absence of Rousseau's waiver would have had the power to order arbitration, it is clear from the foregoing that Rousseau has absolutely no intention of participating in an arbitration, either.  This is further reason to conclude that she has forfeited any right to arbitration at this point.

Rousseau was sent notice of her right to ask for arbitration by certified mail, and it was signed for at the very location she was later served with process. Rousseau's assertion that she does not recall the notice is not evidence of non-receipt.[14] Moreover, there is no testimony from other members of the household. Thus, as in the above cases, there is insufficient evidence to overcome the presumption of receipt.

### 2. Rousseau Offers No Admissible Evidence In Defense To Arent Fox's Breach Of Contract Claim (Count I).

Rousseau fares no better on the merits. Arent Fox alleged it had a contract with Rousseau evidenced by an Engagement Letter with Rousseau, and successfully defended two lawsuits pursuant to that agreement. It billed Rousseau and her son on a monthly basis without objection for four months.[15]

Rousseau in her motion to vacate says she was not a party to the Engagement Letter, that the Client was only Bimota NA, and that the fee was to be capped at $25,000 to be followed by a contingency arrangement. These allegations cannot support a defense to Count I as they are flatly contracted by the plain terms of the Engagement Letter and thus are in violation of the parol evidence rule. Rousseau is explicitly listed as a party and is an addressee. The letter says "you" are "responsible to reimburse us" for "fees" and "for third party costs." There are signatures not just of Bimota NA as a corporation (which her son signed as President) and her son individually, but of Rousseau in her individual capacity, as well. Indeed, the Court can take

---

[14]     If Rousseau ultimately argues Ginny Small never gave the document to her, that would not improve her position since this failure cannot be imputed to anyone but Rousseau.

[15]     References to her son notwithstanding, there is no requirement in the Engagement Letter or otherwise that Arent Fox also name him as a defendant. "[I]t is long established in the Second Circuit that a joint obligor is not an indispensable party to an action against one of the other obligors." Giaguara S.p.A. v. Amiglio, 257 F.Supp.2d 529, 541 (E.D.N.Y. 2003) (citing Greenleaf v. Safeway Trails, 140 F.2d 889, 890-91 (2d Cir. 1944)).

judicial notice that Bimota NA was not even a party to the federal complaint. See Bimota SPA v. Rousseau, et al., C.A. No. 1:08-cv-10274-VM (S.D.N.Y.). Likewise, the Engagement Letter says the $25,000 is only an "initial" retainer. It does not say $25,000 is a cap or that it would be followed by a contingency arrangement. The Engagement Letter also has provisions for monthly billings, interest and attorneys' fees for collection, all of which contradict the notion that $25,000 was a cap or there was a contingency arrangement. That is why, when Arent Fox questioned Rousseau about her failure to pay in April and May of 2009 (see Rousseau declaration Docket No. 14-3), she did not assert that she was not responsible, or that the fees were in excess of some cap. She simply said she did not have the funds to pay and apologized. Second Kaplan Decl. Ex. E.

Rousseau's new-found contradiction of the Engagement Letter "obviously recreates the very danger against which the parol evidence rule [was] supposed to protect-the danger that a party, having agreed to a written contract that turns out to be disadvantageous, will falsely claim the existence of a different, oral contract." Chimart Assoc. v. Paul, 66 N.Y.2d 570, 573, 498 N.Y.S.2d 344, 347, 489 N.E.2d 231, 234 (1986). [16] So, Rousseau's assertions cannot be considered.

---

[16]    Rousseau's claim of "unconscionability" of attorney's fees in a collection action is a red herring, as Arent Fox did not seek and did not receive any fees for collection in the default judgment. While academic at this point, Arent Fox questions whether the New York Court of Appeals would agree with applying the rationale of the two cases Rousseau cites -- lack of mutuality -- to a commercial contract with a corporation and its 80% shareholder, a wealthy, sophisticated client in her own right. Lack of mutuality is not generally grounds to declare a contractual provision unenforceable. See Weiner v. McGraw-Hill, Inc., 57 N.Y.2d 458, 464, 457 N.Y.S.2d 193, 196, 443 N.E.2d 441, 444 (1982). In any event, New York is a blue pencil jurisdiction which allows the Court to simply cross out any provision that the Court concludes is unenforceable and enforce the remainder. See Karpinski v. Ingrasci, 28 N.Y.2d 45, 51, 320 N.Y.S.2d 1, 6, 268 N.E.2d 751, 754 (1971).

**3.    Rousseau Offers No Evidence In Defense To
Arent Fox's Account Stated Claim.**

Arent Fox is also entitled to collect for a breach of an Account Stated, per Count III,
since the receipt of monthly bills without an objection waives any later-invented problem with
the account. Instead of registering any objection to the bills, Rousseau remained silent during
the billing period. As stated above, when contacted about her non-payment in May of 2009, she
simply stated that she did not have the funds to pay. <u>See</u> Second Kaplan Decl. Ex. E thereto.

Per the doctrine of Account Stated, "a defendant impliedly agree[s] to pay the amount
due as reflected in plaintiff's invoice when defendant received and retained it without rejecting it
or objecting to it within a reasonable period of time" <u>Jim-Mar Corp. v. Aquatic Const., Ltd.</u>, 195
A.D.2d 868, 870, 600 N.Y.S.2d 790, 792 (1993) (citations omitted) "Under these circumstances,
defendant was bound to examine the invoice and raise any objections, and [her] '[s]ilence is
deemed acquiescence and warrants enforcement of the implied agreement to pay.'" <u>Jim-Mar</u>,
195 A.D.2d at 870; 600 N.Y.S.2d at 792 (cites omitted). <u>Accord</u>, <u>Chisholm-Ryder Co. v.</u>
<u>Sommer & Sommer</u>, 70 A.D.2d 429, 431, 421 N.Y.S.2d 455, 458 (1979). "An **attorney** may
contract with his client on the cost of his past or future services, of course, and **an account**
**stated may exist between them** [and in] the absence of fraud, mistake or other equitable
considerations making it improper to recognize the agreement, it **is conclusive**." 70 A.D.2d at
431, 421 N.Y.S.2d at 458 (Emphasis added.)

Arent Fox specifically alleged the monthly billing and lack of dispute, thereby
establishing a breach of Account Stated in Count III of its Complaint. Complaint ¶¶ 27-29.
Therefore it was incumbent upon Rousseau to introduce some evidence in her motion to vacate
suggesting that Arent Fox's assertion is incorrect. Rousseau has introduced **no** evidence, as is
required in order to state a "complete" defense, refuting the facts that she received detailed

monthly bills over a four-month period without registering an objection. Thus, Rousseau states

no defense much less a "complete" defense, as required by the Second Circuit to vacate a default

judgment.[17]

### 4.    Arent Fox Made A Proper Showing Of Damages Under Rule 55.

Rousseau also misconstrues the Court's rules on default judgments so as to require an

itemization of each lawyer's time and hourly rate in **every** case in which a default judgment is

sought under Rule 55. The Court's Standing Rule B.v. on itemization of attorney's fees, appears

to apply most aptly to actions where attorney's fees are sought collateral to the underlying

dispute, as part of the cost of enforcement. That is so because the defendant, being served with

the Complaint, is not on notice of the amount of attorneys' fees necessary to prosecute the

Complaint and the Court therefore needs to independently evaluate those fees. Here, the

underlying dispute is a breach of contract and account stated, albeit for attorneys' fees for

services rendered. Those amounts were properly set forth in the Complaint itself, and so

Rousseau was informed as to precisely how much Arent Fox sought in that regard. And under

the doctrine of Account Stated, it is **unnecessary** for the Court to go behind the statements that

were rendered, freely received and not disputed. As a matter of law, Rousseau is deemed to have

accepted them and deemed them reasonable by her undisputed silence and subsequent promises

---

[17]    Since **either** of the two foregoing reasons is justification for denying the motion to vacate, it is not necessary for the Court to consider prejudice. Nonetheless, delay in this case will make it much more difficult for Arent Fox to proceed with discovery and locate witnesses. The controversies Arent Fox handled regarded the functioning and termination of her franchise business. The witnesses to this closing and the related evidence are now scattered, and it may well be impossible for Arent Fox to reconstitute what once was. Moreover, this delay allows Rousseau to remove or hide assets to thwart Arent Fox's recovery. Where delay "may thwart plaintiff's recovery or remedy [or] result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion [there is] no error in [a] conclusion that Defendant[] failed to show a lack of prejudice . . .." New York, 420 F.3d at 110.

to pay over four months. No fees for collections costs were included in the judgment. Thus, the Standing Rule is not applicable here.

In any event, the issue is not whether or not there is agreement on the interpretation of this Court's Standing Rules; the standard is whether there is good ground to vacate a judgment under Rule 60. Most judges in this Court do not even have a standing rule specifying what form the evidence must take in order to establish a claim for attorney's fees under Rule 55. And Rousseau certainly did not suffer any prejudice from the above application of the Court's Standing Rules. To obtain damages related to a default judgment, "a plaintiff must present admissible evidentiary proof of his alleged damages, unless the claimed amount is liquidated or susceptible to mathematical calculation." In re Suprema Specialties, Inc., 330 B.R. 40, 54-55 (S.D.N.Y. 2005) (citing SEC v. Mgmt. Dynamics, 515 F.2d 801, 814 (2d Cir. 1975)). Rule 55(b)(2) permits a court to conduct a hearing "as it deems necessary and proper" to calculate damages, "vesting considerable discretion in the court to establish the procedures appropriate to the particular case." Id. at 55. However, a hearing is not necessary as long as the court ensures that there is a basis for the damages specified in a default judgment. Arent Fox provided the Court with an itemization of each bill and the date. The Court was thus able to tally the amounts, and calculate interest thereupon. The Court can also take judicial notice of the dockets. Since damages were properly established by evidence to the Court's satisfaction, it was not error under Rule 55 for the Court to grant a default judgment based on such evidence.[18]

---

[18]    In any event, Rousseau has attached copies of some of the bills to her motion. Arent Fox has supplied them all. See Kaplan Decl. Ex. D. The bills set forth the amount of time spent, and the hourly rate of the attorneys working on the case.

**C.**     **The Court Should Not Vacate The Judgment Without A Bond.**

Arent Fox recognizes that the Court, without having had an opportunity to hear from Arent Fox, urged the parties to consensually resolve this motion. Arent Fox did per the Court's suggestion attempt to settle this case at a specific discount, and avoid inconveniencing the Court -- to no avail. For the above reasons, however, Arent Fox could not consent to this motion, and asks that the Court simply deny it.

In the event the Court is nonetheless inclined to grant the motion, it should only do so only on limited, prescribed circumstances, including "on the condition that [the defendant] post a bond covering the amount claimed by [the plaintiff], including interest." First Fidelity Bank, N.A. v. Government of Antigua & Barbuda-Permanent Mission, 877 F.2d 189, 196 (2d Cir. 1989). The Second Circuit has approved of this procedure numerous times. See Powerserve International, Inc. v. Lavi, 239 F.3d 508, 515 (2d Cir. 2001). In this particular case, there are grounds to believe that Rousseau is not reputable, having made many misstatements in this case alone. Arent Fox is concerned that she will use the reinstatement of this case as an opportunity to hide her assets. The federal complaint and the affidavit of Harry Scott filed by Bimota SPA are replete with particularized statements that that Rousseau has secreted assets and misspent funds belonging to Bimota SPA, and has used the assets of her Company as a "personal piggy bank." See Bimota SPA v. Rousseau, et al., C.A. No. 1:08-cv-10274-VM (S.D.N.Y.) (Docket Nos. 10, 20). Moreover, it has taken a great deal of effort to bring Rousseau to this point, having ignored Arent Fox's notices, as well as the Complaint and Summons. This does not bode well for Arent Fox's attempts to enforce a judgment. Thus, a bond is necessary here if the Court were to vacate the default judgment.

## III. <u>CONCLUSION</u>

For the foregoing reasons, the motion to vacate should be denied.

/s/ David Wynn

David Wynn, Esq. (DW 8660)
ARENT FOX LLP
1675 Broadway
New York, NY 10019
Tel: 212.484.3900
Fax: 212.484.3990
Email: wynn.david@arentfox.com

Dated: November 6, 2009         Attorneys for Plaintiff Arent Fox LLP